UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARTEZ DESHAWN BROWN,

               Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

               Defendants.
_____/

Case No. 1:22-cv-16

Hon. Hala Y. Jarbou

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.     Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Central Michigan Correctional Facility (STF) in St. Louis, Gratiot County, Michigan. The events about which he complains, however, occurred at the Bellamy Creek Correctional Facility

(IBC) in Ionia, Ionia County, Michigan. Plaintiff sues the MDOC and the following personnel

employed at the MDOC administrative offices in Lansing, Ingham County, Michigan: Director

Heidi Washington, Deputy Director Kenneth McKee, "Corrections Facilities Administration"

Norma Killough, and Grievance and Appeals Section Manager Richard Russell. Plaintiff also sues

the following IBC personnel: Warden Matt Macauley and Administrative Grievance Coordinator

M. Robinson. Plaintiff sues all Defendants in their official capacities. (Compl., ECF No. 1,

PageID.1, 4–5.)

Plaintiff alleges that Defendants placed his life at risk during the COVID-19 pandemic. At

the start of September 2020, IBC purportedly had a major COVID-19 outbreak. Plaintiff asserts

that at that time, he had never tested positive for COVID-19. On September 1, 2020,[1] Plaintiff was

directed to move into a cell and bunk with Prisoner Sanders (not a party). According to Plaintiff,

Sanders informed him that he "test[ed] positive for the COVID-19 virus well before the plaintiff's

arrival to IBC." (*Id.*, PageID.9.) Plaintiff raised concerns about bunking with Sanders to Sergeant

Stump (not a party) and Prison Guard Nowick (not a party), but neither Stump nor Nowick changed

his cell assignment.[2] Approximately 10 days later, Plaintiff tested positive for COVID-19. Plaintiff

---

[1] Plaintiff's complaint is hardly a model of consistency and clarity. Among the inconsistencies, Plaintiff's factual allegations begin by specifically referencing September 1, 2021. (*See* Compl., ECF No. 1, PageID.9.) By the next page of the complaint, he asserts that he received a grievance rejection related to the matter 11 months earlier, on October 1, 2020. (*See id.*, PageID.10.) Clearly, both cannot be correct.

The Court concludes that Plaintiff's reference to September 2021 was a simple typographical error. Most of the remainder of the complaint references late 2020 and early 2021. The grievance numbers that Plaintiff refers to in the complaint begin with "IBC-2020-09" (*see, e.g., id.*), which appears to reference IBC and September 2020.

[2] Adding to the inconsistencies, there remains some question whether Plaintiff intended to name Stump and Nowick as Defendants in this action. Rule 10(a) of the Federal Rules of Civil Procedure requires that "[t]he title of the complaint must name all the parties . . . ." Fed. R. Civ. P. 10(a). Plaintiff includes neither Stump nor Nowick in either the list of Defendants in the caption of the complaint (*see* Compl., ECF No. 1, PageID.1) or in the list of parties to the action (*see id.*, PageID.3–5). In the statement of facts, Plaintiff refers to these two individuals as "Sergeant

alleges that he "contracted the deadly COVID-19 virus from prisoner Sanders . . . ." (*Id.*, PageID.10.)

Although Plaintiff does not describe what, if any, symptoms he experienced when he contracted COVID-19, he alleges that Defendants failed to provide him any form of medical treatment. Plaintiff asserts that he filed grievances complaining of each Defendant's "fail[ure] to act in a professional manner" and their "fail[ure] to assist him in receiving medical treatment." (*Id.*)

Plaintiff did not receive the relief he sought. Defendant Robinson either rejected or denied Plaintiff's Step I grievances. Plaintiff appealed his grievances to Step II. In a response to one of his Step II appeals, Defendant Macauley referenced Plaintiff's placement in temporary segregation on August 8, 2020, apparently at IBC, more than three weeks before his placement with Prisoner Sanders.

Defendant Macauley's response further referenced several steps Defendants at IBC took addressing the risks posed by the COVID-19 pandemic. Among these were isolation and quarantine protocols, weekly mass testing at IBC for COVID-19, enhanced cleaning efforts, and adjustments to maintain social distancing. Plaintiff does not dispute Macauley's assertions, but merely refers to the response as an unfavorable decision. Plaintiff alleges that he therefore appealed

---

STUMP" and "Prison Guard NOWICK" (*id.*, PageID.9, 12), but he does not refer to them as defendants throughout the statement of facts as he does with those individuals identified as Defendants in the caption and list of parties. Nonetheless, Plaintiff refers to Nowick and Stump in a list of Defendants related to what Plaintiff styles as "Count #3" in the complaint. (*See id.*, PageID.15.)

Based on the overwhelming indications given by the complaint, the Court concludes that Plaintiff did not intend to name Nowick and Stump as Defendants. The Court therefore considers them non-parties to this action.

the grievances to Step III with Defendants Washington and Russell, and Russell upheld the rejections.

Plaintiff further alleges vague incidents of retaliation against him. He states that Defendant Robinson retaliated against him when Robinson denied his grievances. Defendant Macauley also retaliated against him by "intentionally fail[ing] to take action" to control his subordinates. (*Id.*, PageID.13.)

In his first request for relief, Plaintiff "seeks monetary damages of $100,000, for each and every claim . . . ." (ECF No. 1, PageID.7.) Later in the complaint, Plaintiff provides a different description of the relief he requests, but it is not altogether clear whether he intends to limit his second request for relief to his retaliation claims. (*See id.*, PageID.19.) In his second request for relief, Plaintiff seeks injunctive relief, declaratory relief,[3] and damages of $100,000 against each Defendant rather than for each claim.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

---

[3] Although Plaintiff fails to articulate that he seeks declaratory relief, he writes that he seeks "a ruling that the acts and omissions . . . of the [D]efendants . . . constitutes a deprivation of [P]laintiff's . . . Constitutional rights." (Compl., ECF No. 1, PageID.19.)

4

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

### A.    MDOC

As an initial matter, Plaintiff may not maintain a § 1983 action against the MDOC. Section 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). But neither the State of Michigan nor the MDOC is a "person" within the meaning of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person.").

Moreover, even if the MDOC or the State of Michigan were "persons" under § 1983, Plaintiff's claim would be properly dismissed because the MDOC and the State of Michigan are immune from suit under the Eleventh Amendment. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal

courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

For these reasons, Plaintiff's claims against the MDOC are properly dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and 42 U.S.C. § 1997e(c). Accordingly, the Court will dismiss the MDOC from this action.

### B.    Lack of Allegations

Plaintiff makes no allegations against Defendants McKee and Killough in the body of his complaint.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject

6

to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Plaintiff fails to even mention Defendants McKee and Killough in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, the Court will dismiss Plaintiff's action against Defendants McKee and Killough.

## C.     Claims for Money Damages

Plaintiff appears to sue the Defendants only in their official capacities.[4] To the extent that Plaintiff sues Defendants in their official capacities for money damages, his claims fail.

Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)

---

[4] Yet again, Plaintiff fails to remain consistent. Plaintiff clearly states repeatedly that he sues the Defendants in their official capacities only in both the caption of the complaint (Compl., ECF No. 1, PageID.1) and the list of Defendants (*id.*, PageID.4–5). Nonetheless, Plaintiff later writes, "The defendants and each of them are being sued in both, their individual and official capacities, as they act and perform their fiduciary duties under the color of state law at all times during their hours of commissions." (*Id.*, PageID.16 (verbatim).)

(citing *Monell*, 436 U.S. at 690, n.55). An official-capacity suit is to be treated as a suit against the entity itself. *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); s*ee also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Graham*, 473 U.S. at 165–66. Here, Defendants are MDOC employees employed by the State of Michigan. Therefore, Plaintiff's claims against the Defendants in their respective official capacities are actually claims against the State of Michigan.

As noted above, regardless of the form of relief requested, the states are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst*, 465 U.S. at 98–101; *Pugh*, 438 U.S. at 782; *O'Hara*, 24 F.3d at 826. Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern*, 440 U.S. at 341, and the State of Michigan has not consented to civil rights suits in federal court. *Abick*, 803 F.2d at 877. Accordingly, Plaintiff has failed to state a claim against the remaining Defendants in their official capacities for money damages.

### D.    Claims for Injunctive and Declaratory Relief

To the extent that Plaintiff sues the remaining Defendants in their official capacities for injunctive and declaratory relief, he again fails to state a claim.[5]

---

[5] As discussed above, a suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Nevertheless, an official-capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (discussing that Eleventh Amendment immunity does not bar prospective injunctive relief against a state official).

According to the complaint, Plaintiff complains of events at IBC and he has since transferred facilities to STF.

The Sixth Circuit has held that transfer to another prison facility moots prisoner injunctive and declaratory claims. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). These Sixth Circuit opinions contain only brief explanations of the reasoning supporting this rule. Underlying the rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Lyons*, 461 U.S. at 102; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyon*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495–96.

Moreover, Plaintiff fails to allege facts indicating that he remains in immediate danger of sustaining any direct injury as a result of the challenged conduct. Accordingly, Plaintiff has failed to state a claim against the remaining Defendants in their official capacities for either injunctive or declaratory prospective relief.

### E.     Supervisory Liability

Even if the Court were to ignore Plaintiff's repeated assertions that he sues Defendants in their official capacities only and instead construe the complaint to include claims against Defendants in their individual capacities as well, Plaintiff's allegations would still fail to state a claim. Plaintiff fails to allege that any Defendant took any action against him, other than to suggest

9

that Defendants failed to adequately supervise their subordinates or respond to Plaintiff's

grievances. Government officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676;

*Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed

constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*,

532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The

acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere

failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881,

888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor

denied an administrative grievance or failed to act based upon information contained in a

grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that

each Government-official defendant, through the official's own individual actions, has violated

the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active

conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending
> individual is not actionable *unless* the supervisor either encouraged the specific
> incident of misconduct or in some other way directly participated in it." *Shehee,*
> 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have
> interpreted this standard to mean that "at a minimum," the plaintiff must show that
> the defendant "at least implicitly authorized, approved, or knowingly acquiesced in
> the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300,

and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v.*

*Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976),

and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d

1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Washington, Russell, Macauley, or Robinson encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, Plaintiff fails to allege any facts at all about their conduct beyond their upholding of grievance rejections. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in the events surrounding Plaintiff's placement in a cell with Prisoner Sanders or any of the conduct that followed. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. In addition to the other faults addressed above, because Plaintiff's § 1983 action is premised on nothing more than respondeat superior liability, his action fails to state a claim.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated: July 22, 2022                          /s/ Hala Y. Jarbou
                                              HALA Y. JARBOU
                                              CHIEF UNITED STATES DISTRICT JUDGE

12